The opinion of the Court was delivered by
Frost, J.
The defendant, Read, signed and sealed the bond and delivered it to Commander, with authority to Commander to obtain a loan of f5000 on the security of the bond; which amount it was the intention of the defendant, (Read,) when he executed the bond, should be applied to the purchase of negroes ; and of which Commander engaged to give Read a mortgage to indemnify him against his liability on the bond. Commander having obtained a loan from the plaintiff, filled up the blank for the name of the obligee with the plaintiff’s name and delivered it to the plaintiff. Commander applied the loan, not to the purchase of negroes, but to the payment of his debts. There was evidence, which, it was argued for Commander, authorized him to use the bond in any manner which might suit his interest or convenience.
On this evidence, the issue submitted to the jury was, whether Commander was authorized by Read to fill up the blanks in the bond, and use the same, when complete, as he had done ; with the instruction, that, if, according to the interpretation of all the evidence, Read should be understood to have authorized such an act as Commander had done, he must be held liable to the plaintiff; otherwise not.
*503 The issue, thus submitted, comprehended the filling of the blanks, the procurement of the loan, the delivery of the bond, and the use which Commander made of the money loaned. It might be, that while the jury were satisfied that Commander had authority to do everything else which he did, he was not authorized to apply the loan to any other purpose than the purchase of negroes; and on that ground, have found a verdict for the defendant. In the opinion of the Court, there was error when the defendant’s liability was submitted to the jury, in not distinguishing between the authority of Commander to use the bond in obtaining a loan, and the application which Commander made of the money. It is probable, that the question respecting Commander’s authority to use the money, as he did, controlled the verdict of the jury on the issue submitted. The evidence does not show any controversy between Commander and Read respecting the authority of the latter to negotiate the bond, and to apply the money to his own use. The complaint and defence of Read is, that Commander applied the loan to his own use, in a manner different from that which the defendant intended, when he executed the bond. If Commander had purchased negroes and given to Read a mortgage of them for his indemnity, it is clear, from the testimony, that Commander would have acted with the entire sanction and approbation of Read.
The questions then are, Had Commander authority to fill the blanks in the bond, and to borrow the money which the plaintiff loaned to him; and to deliver the bond to the plaintiff to secure the re-payment of the loan ; and if Commander had authority so to negotiate the bond, is the defendant discharged from liability because Commander did not apply the loan to the purchase of negroes ?
It is objected to Commander’s authority to fill the blanks, that it could only be conferred by deed. The general rule certainly is, that an authority by deed, is necessary to bind the principal under seal. Story on Agency, Sect. 49. But the rule does not comprehend alterations in a deed, executed by the principal, *504 which are made with the consent of the parties, either before the deed is executed or before it is delivered. By the signing and sealing, or by the delivery, the deed is confirmed by the parties to it with all the alterations which have then been made.
Even after the delivery of a deed, alterations made by an agent, not authorized by deed, if made with the consent of all the parties, do not invalidate it. In Zouch vs. Clay, 2 Lev. 35, after a bond had been made and delivered by two obligors, a third signed and sealed it, and his name was inserted in the bond with the consent of the parties. This was held not to impair its obligation. In Hudson vs. Revolt, 5 Bing. 368, a trust deed for creditors was executed and delivered with the amount due to one of the creditors left blank; and it was held that the subsequent insertion of the amount, with the assent of the maker of the deed, did not affect its validity. In Hibble-white vs. McMorine, 6 M. & W. 200, the cases are reviewed, and it seems to be settled by that case, in England, that if in a deed, operating a conveyance or transfer of property, a blank is left for the name of the vendee, parol authority to fill the blank is insufficient. But our own and other American authorities hold the contrary. In Duncan vs. Hodges, 4 McC. 239, the plaintiff signed and sealed a printed deed of conveyance of a tract of land, and left it with his agent to be filled up whenever the defendant, who had agreed to buy it, should execute a bond for the purchase money. It was held that the authority to the agent was sufficient. In Woolly vs. Constant, 4 Johns. R. 54, a bill of sale of a ship, containing blanks for the recital of the register, was executed and delivered; and parol authority was held sufficient to fill the blanks, with the consent of all the parties.
In Speake vs. U. States, 9 Cran. 36, Judge Story delivering the opinion of the Court, (Livingston, J., dissenting,) affirms it to be clear, at common law, that an alteration or addition in a deed, if done with the concurrence of all the parties to the deed does not avoid it; and that this principle applies equally, whether the alteration be made before or after the delivery of *505 the deed; and he affirms that the cases in the books, in which alterations in deeds have been held to avoid them, will be found, on examination, to have been cases in which such consent had not been given.
When the bond was sent to Commander by Read, and left in his possession to be used for the purpose of obtaining a loan, it was not delivered for the purposes of the deed. Until delivery, a deed is of no effect. Delivery must consist in an act by which the deed is made effectual to charge the parties with the covenants and obligations it may contain.
The defendant was never charged with the obligation of the bond until it was delivered to the plaintiff. In this view of the case, parol authority was clearly sufficient to fill the blank for the name of the obligee. But even if it could be maintained, that the deed was delivered when put into Commander’s possession, parol authority, in that case, was sufficient also.
Parol authority was sufficient, from the earliest history of the law, for the execution of unsealed contracts and for the making alterations in them, at any time, with, the consent of the parties. Urgent considerations of convenience are combined with sufficient authority to maintain, that bonds should be excepted from the necessity of authority by deed, to make such alterations in them, as may be made in parol contracts, by parol agency; and that in this respect, bonds should be assimilated to simple contracts.
The rule which required authority by deed, to make any alteration in a deed after delivery, was enforced in the early period of the law, with great rigor. Any erasure, interlineation or addition, made without such authority, in a material part of the deed, avoided it, even though made by a stranger ; Pigot's case, 11 Co. 27. For such alterations, the deed was adjudged void on inspection. It was for this purpose, that deeds were required to be pleaded with proferí; but afterwards, the Judges left it to be tried by the jury, whether the alteration was made before the delivery of the deed; Leyfield's case, 10 Co. 92. In the simplicity of that remote age, great solemnity was attributed *506 to a seal; and a deed was intangible by any agent whose authority was not created by the same solemn symbol which authenticated the deed itself. Deeds were not used for the transfer of personal property, and when there was no capital, and the employment of credit was unknown, obligations for debt were rare. Rules accommodated to that primitive condition of society have been forced, in some degree, to yield to the exigencies of incessant commercial exchanges and of universal credit.
Lord Mansfield, whose eminent judicial fame and usefulness may chiefly be attributed to his enlightened adaptation of the common law to the necessities of commerce and the convenience of a more advanced state of society, first excepted bonds from the operation of the rule, which required an authority by deed to make such alterations as the convenient use of those securities made indispensable. In Tesciera vs. Evans, 1 Anstr. 228, an action was brought on a bond that had been executed with the amount and the name of the obligee in blank, on which the plaintiff had advanced money; and afterwards the name and amount were inserted by the broker. The defendant pleaded non est factum, and Lord Mansfield ruled that the bond was well executed; and that the broker must be considered as the attorney of the defendant, authorized by the defendant to fill up the blanks. This case has not been overruled in the English Courts, — and it has been followed in most of the American Courts. In Stahl vs. Berger, 10 S. & R. 170, a blank left in a single bill, with the intention that it should be inserted when the money was borrowed, was filled with the name of the lender. In Ex parte Kirwin, 8 Cowen, 118, an appeal bond was executed, and a blank, left for the amount, (which was to be ascertained from the Justice,) was afterwards filled when the sum was ascertained. In Smith vs. Crooker, 5 Mass. 538, the name of a surety, after he had executed the bond, was inserted in his absence. In all these cases, parol authority was held sufficient for the acts done.
The testimony is uncontradicted, that Read having executed the bond, sent it to Commander, with authority to negotiate a *507 loan on its security : And the next question is, Did Read thereby authorize Commander to fill the blanks with the date and name of the plaintiff, who advanced the money 1 In Carson vs. Hill & Jones, 1 McM. 76, a note in blank, except that $5000 was written at the top, was signed by several parties and delivered to one of them, to be used for his benefit, who delivered it to the plaintiff, as security for advances. The plaintiff filled the blank, in the terms of a promissory note, for the payment of the sum written on the paper. It was held that the defendants, who had signed the note, were liable as makers. In Aiken vs. Cathcart, 3 Rich. 133, a note was made with the name of the payee in blank ; and the defendant was first indorser. The indorsements were made to enable the maker to raise money on the note. The plaintiff, having advanced the amount of the note, it was deposited with him, as a security for the advance, and he afterwards filled the blank in the note with the name of the defendant. It was held that when the indorser of a note commits it to the maker in blank, either in whole or in part, the note carries, on the face of it, an implied authority to the maker to fill the blank.
The same evidence which is sufficient to give authority to the holder of a note to fill the blanks which may be left in it, must also be sufficient to authorize the holder of a bond to fill the blanks which may be left in it, when, in each case, the instrument is delivered to the holder to be used by him in procuring a loan, and to be delivered to the lender as a security for the sum advanced. The act to be done (the filling of the blank) is the same, and to have the same effect in completing the legal title of the transferee. The requisite evidence of agency cannot be made to differ by the circumstance, that one is a negotiable instrument, and the other not negotiable. The same evidence of authority must be sufficient, when the act to be done is the same, though the subject of the agency is different. If the question be about the sufficiency of verbal directions to deliver, the same evidence must suffice, whether the subject of delivery be a bond or a note or a chattel. And when a bond or *508 note is delivered, to obtain a loan for the use of the holder, the delivery and possession of the instrument must confer on the holder equal authority to make an effectual transfer of the security, when the act necessary for this purpose, is, in each case, the filling of a blank with the name of the lender.
The law of agency is, that the appointment of an agent confers the authority to do whatever is necessary to the effectual execution of the agency, whatever the subject of it may be. If it be in the course of trade, for the holder of a bill on its negotiation to indorse it,, an agent employed to get a note discounted may, unless expressly restrained, indorse it in the name of his employer, so as to bind him by the indorsement. Fenn vs. Harrison, 3 T. R. 757; S. C. 4 T. R. 177; and a servant interested to sell a horse, may warrant, unless forbidden. Helyear vs. Hawke, 5 Esp. 75; Hicks vs. Hankin, 4 Esp. 116. The distinction between a general and a special agent, in this respect, seems to be, that a general agent is empowered “ to bind his employer by all acts within the scope of his employment ; and that power cannot be limited by any private order or direction, not known to the party dealing with the agent P Paley on Ágenc3r, 201. Strangers can only look to the acts of the parties and to the external indicia of property; and if one person authorizes another to assume the apparent right of disposing of property in the ordinary course of business, it must be presumed, that the apparent is the real authority. The agent may bind his principal within the limits of the authority, with which he has been apparently clothed by his principal, in respect of the subject of the agency ; and there would be no safety in dealing, if he could not; Pickering vs. Busk, 15 East, 43.
Read executed a joint bond with Commander, and delivered it to Commander, to be negotiated for his own use. The name of the obligee and the date were left blank. The delivery of the bond vested an implied authority to do whatever was necessary to make it effectual in obtaining the loan. The blanks were consistent with the purpose for which the bond was delivered. It was proper that they should be left until the loan *509 was effected, so that the date might correspond with the time of the advance, and the blank for the name of the obligee be filled with the name of the lender. These blanks manifested to any person, to whom the bond might be offered, the purpose of the bond; and confirmed the authority to negotiate it which the possession of it imported.
The remaining question is, Whether if Commander had authority to negotiate the bond to the plaintiff, the defendant can be discharged from his liability because Commander did not apply the money to the purchase of negroes, as Read intended and Commander engaged to do. It is certain, that one dealing with an agent within the scope of his authority, is not responsible for the manner in which the agent may account to his principal. A purchaser who pays the price to the agent, acquires a good title, though the agent may never account to his principal for the purchase money.
The motion is granted.
O’Neall, EvaNS and Wardlaw, JJ., concurred.